(82 South. 455)

SHARP et al. v. EDWARDS et al.
(7 Div. 980.)

(Supreme Court of Alabama. April 10, 1919.
In Response to Application for Rehearing
June 19, 1919.)

**1. JUDGMENT ☞407(6)—FRAUD OR ACCIDENT —INJUNCTION.**

One seeking relief in equity against a judgment obtained against him in a court of law by fraud, accident, etc., must show he was guiltless of fraud or negligence, and was ignorant of the fraud, not only when judgment was rendered, but also during the time allowed him for new trial, or that he was prevented from making his motion therefor by accident, fraud, etc.

**2. JUDGMENT ☞407(4) — INJUNCTION — EFFECT OF PENDING APPEAL.**

Plaintiffs could not sue in equity to enjoin enforcement against them by defendants of a judgment alleged to have been obtained by accident, mistake, or fraud, where, when the bill was filed, the judgment was suspended and superseded by an appeal therefrom taken with supersedeas bond by plaintiffs, which appeal was pending.

**3. APPEAL AND ERROR ☞460(1)—SUSPENSION OF JUDGMENT—STATUTES.**

At common law, a writ of error of its own force suspended or superseded further proceedings in the lower court, a rule changed in Alabama at an early date by statute, giving an absolute right of appeal to the losing party on giving security for costs of appeal, which did not suspend the judgment or supersede its enforcement, though Code 1907, § 2873 et seq., gives appellant right to suspend by giving supersedeas bond.

**4. APPEAL AND ERROR ☞485(2) — APPEAL WITH SUPERSEDEAS BOND—EFFECT.**

When supersedeas bond is given on appeal, the judgment appealed from is suspended, its execution or enforcement superseded, and the whole case removed from the jurisdiction or control of the court rendering the judgment and transferred to the appellate court pending appeal.

**5. JUDGMENT ☞407(2)—INJUNCTION AGAINST ENFORCEMENT—PROCEEDING AT LAW—FOUR MONTHS' STATUTE.**

The remedy by suit in equity to enjoin enforcement of a judgment in a court of law as obtained by accident, mistake, or fraud, is concurrent with that to be had in a court of law by proceeding under Code 1907, § 5372, the four months' statute.

**6. APPEAL AND ERROR ☞438—EFFECT OF TRANSFER OF CAUSE—POWER OF COURT.**

A trial court cannot grant new trial even in term time if appeal is taken and perfected before the motion.

**7. APPEAL AND ERROR ☞437—SUSPENSIVE EFFECT.**

An appeal when perfected divests the lower court of all power to proceed further, except possibly to issue execution, which cannot be done where supersedeas bond is given.

**8. JUDGMENT ☞407(1)—INJUNCTION AGAINST ENFORCEMENT—EQUITY OF BILL.**

The equity of a bill to enjoin enforcement of a judgment at law as obtained by fraud, accident, or mistake, must be determined by the condition or status of the case when the bill was filed, or certainly when the plea was filed setting up the defense of appeal in the lower court superseding its jurisdiction and suspending the judgment.

In Response to Application for Rehearing.

**9. JUDGMENT ☞466 — INJUNCTION AGAINST ENFORCEMENT.**

Injunction against the enforcement of a judgment at law *held* not to have run only against a party in whose favor the judgment was rendered but against the judgment itself as well, the prayer and writ running against both the party and the clerk of the circuit court as such, but being served only on the clerk and never on the party.

**10. JUDGMENT ☞439 — EQUITABLE RELIEF AGAINST—SET-OFF—INSOLVENCY.**

Equity has jurisdiction to enforce an equitable set-off against a judgment, where plaintiff in judgment is insolvent or the set-off or recoupment for some reason is unenforceable at law.

**11. JUDGMENT ☞720—RES JUDICATA—MATTERS LITIGATED.**

A judgment at law is conclusive against the parties to the action as to all questions litigated.

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

Suit by G. B. Sharp and others against W. C. Edwards and others. Decree for defendants, and complainants appeal. Affirmed.

Ross Blackmon, of Anniston, for appellants.

Blackwell, Agee & Bibb, of Anniston, for appellees.

MAYFIELD, J. This is a bill by appellants to enjoin the enforcement of a judgment in a court of law on the ground that the judgment was obtained by accident, mistake, or fraud.

[1] The relief here sought is concurrent with that to be had in a court of law by proceeding under the four months' statute (section 5372 of the Code). A party who seeks relief in a court of equity, against a judgment obtained in a court of law against him by fraud, accident, etc., must show that he was without fault or neglect in the matter, and that he was ignorant of the fraud not only at the time the judgment was rendered, but also during all the time allowed him for a new trial, or that he was prevented from making his motion for a

new trial by accident, fraud, etc., unmixed with negligence on his part. Evans v. Wilhite et al., 167 Ala. 587, 591, 52 South. 845.

[2] To the bill appellees filed a special plea setting up the facts that, at the time the bill was filed and the relief prayed was sought, the judgment in the law court, sought to be set aside and its execution enforced pending the suit was then suspended and superseded by an appeal therefrom being taken with a supersedeas bond by appellants to the Court of Appeals, which appeal was then pending in the Court of Appeals. This plea seems to have been proven without dispute. This was a complete defense to this suit. The chancery court could not, of course, set aside a judgment in the circuit court, or suspend the execution of its enforcement pending the suit, which had been theretofore suspended and removed to the Court of Appeals. The judgment in the circuit court was not then under the control of the circuit court that rendered it, by virtue of the four months' statute or otherwise; and the chancery court, of course, could not compel it to do what it had no right, power, or jurisdiction to do.

[3] At common law a writ of error, proprio vigore, suspended or superseded all further proceedings in the lower court as for the enforcement of the judgment sought to be reviewed.

This rule was at an early date in this state changed by statutes, which gave an absolute right of appeal to the losing party on giving security for the costs of appeal; but such appeal did not suspend the judgment, or supersede its enforcement pending the appeal. Other statutes, however, do give the appellant the right to have the judgment suspended, and its enforcement superseded pending the appeal by giving a supersedeas bond. Code, § 2873, et seq.

[4, 5] When such supersedeas bonds are given on appeals, the judgment is suspended, and its execution or enforcement superseded, and the whole case removed from the jurisdiction or control of the court rendering the judgment, and is transferred to the appellate court pending the appeal. This being true, of course, the chancery court could not compel the circuit court to set aside the judgment which was not under its control, but which the complainants had removed into the appellate court, where the matters were then pending. As stated above, this remedy in equity is concurrent with that of the trial court acting under the four months' statute to set aside the judgment and award a new trial. Could the trial court have set aside the judgment after the appeal was taken and supersedeas bond given? Certainly not; the trial court loses all control when an appeal is taken, as was done in this case.

[6, 7] A trial court cannot grant a new trial even in term time if the appeal be taken and perfected before the motion for a new trial. Hudson v. Bauer Gro. Co., 105 Ala. 200, 16 South. 693. The appeal when perfected divests the lower court of all power to proceed further, unless it be to issue execution; and this cannot be done if supersedeas bond be given as required. So. Ry. Co. v. B. S. & N. O. R. R. Co., 131 Ala. 663, 29 South. 191; Ex parte City of Montgomery, 114 Ala. 115, 14 South. 365; Moore v. Randolph, 52 Ala. 530; Montevallo Co. v. Reynolds, 44 Ala. 252.

This being true, of course, the chancery court could not compel the circuit court to do what it had no jurisdiction to do.

[8] It could make no difference that the appellate court affirmed or reversed the judgment appealed from, before final decree in the chancery court. The equity of the bill must be determined upon the condition or status when the bill was filed, or, certainly, when the plea was filed setting up the defense.

It is unnecessary to pass on the other questions, as it follows the bill must be dismissed on these grounds.

Appellants concede that the circuit court lost jurisdiction or control over the judgment by virtue of the appeal to the Court of Appeals, but insist that the chancery court did not so lose control or jurisdiction. The trouble with this contention is that the jurisdiction of the chancery court was only invoked to compel or require the circuit court to do or not to do certain things in reference to this judgment—over which it then had no control. The chancery court can only compel the circuit court to do what it has the right and power to do, and cannot compel it to do wrong or violate the law—which it would do if it granted a new trial and allowed new evidence and new issues, and which would probably result in a different judgment.

So far as the injunction feature of the bill was concerned, none was needed because the execution of the judgment was superseded by the supersedeas bond on appeal.

It is useless to say that the chancery court could afford no relief against the judgment in the circuit court, by rendering judgments of set-off or recoupment against it. In other words, unless the judgment in the circuit court was set aside and reopened for further proof and defenses, no relief could be awarded. The judgment in the circuit court of necessity formed the basis upon which all the other matters set up in the bill had to rest. So, as the equity of the bill as to it must fall, all other matters which are purely incidental to it must fall with it.

It is not improper to say, however, that so far as the bill seeks relief under the doctrine of subrogation or suretyship, it is

defective in failing to show that the complainants have paid the debts or demands as to which subrogation is sought, or as to which the suretyship existed.

It follows that the decree of the lower court must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, and THOMAS, JJ., concur.

In Response to Application for Rehearing.

MAYFIELD, J. [9] Counsel for appellants earnestly insists that on the original hearing we misconceived the purpose of the bill. In his brief on rehearing he says:

"The error that the court has made in this case, in its opinion rendered in this cause, it would seem, is in treating the injunction issued in the premises as a process directed to the circuit court in relation to the Edwards' judgment. Nothing of the kind in fact was done, nor was anything of the kind in fact sought. Edwards, and Edwards alone, was enjoined by the writ and it operated merely upon him."

The original bill not only specifically prayed that the clerk of the circuit court be enjoined from collecting the judgment, but the court ordered and directed that the injunction issue as prayed. It did so issue, as prayed, and was served on no one but the clerk of the court. It was never served on the respondent or his agent or attorney.

In the amended bill the prayer is as follows:

"Orators further pray that said judgment of the said W. C. Edwards as mentioned in their original bill having been affirmed by the Court of Appeals of the state of Alabama, that your honor will now sustain the writs of injunction heretofore issued in said cause for the purposes for which they were issued, as originally prayed."

If this did not seek to obtain injunctive relief against the clerk of the circuit court from enforcing a judgment in that court, it is difficult to understand what would.

While the injunction did issue against Edwards, or his agents and attorneys, it also issued against "Lamar Jeffers, as clerk of the circuit court of Calhoun county," and he was the only person upon whom the writ was ever served. There was only one writ of injunction issued, and that was served on the clerk of the circuit court on February 12, 1917, and thereafter, on August 24th, continued by another order, and was dissolved only by the final decree of the court on January 15, 1918.

The record and proof conclusively show that, when the bill was filed and the injunction issued, there was no enforceable judgment in the circuit court. The enforcement of that judgment had been superseded by the circuit court, and the whole proceeding re- moved to the Court of Appeals, by action of complainants, the defendants in the circuit court, who had executed a bond, the conditions of which were to pay such judgment and costs as should be rendered in the Court of Appeals. A judgment was rendered in the Court of Appeals against appellants and the sureties on their supersedeas bond. This judgment was a judgment of the Court of Appeals, and not of the circuit court. The clerk of the circuit court could not enforce it by issuing an execution thereon. The judgment in the circuit court had been by complainants' voluntary action merged into a judgment in the Court of Appeals. The clerk of the appellate court was the officer who was charged with the duty of issuing execution on it. It was not only a judgment against complainants, but also against their sureties. It took the place of the judgment in the circuit court, and there was no reason for enjoining the enforcement of the judgment in the circuit court—it was dead and extinguished by the judgment in the Court of Appeals. If any judgment had to be, or ought to be, enjoined, it was the judgment in the Court of Appeals. The effect of an injunction against a judgment or legal proceeding to enforce it can only serve to supersede or stay the proceeding. The circuit court had already superseded and stayed the proceedings, when the bill was filed and injunction issued. The injunction was therefore useless from the day it was issued until it was dissolved.

Appellants seriously argue on this application for rehearing that the injunction ran against the defendant Edwards only, and not against the judgment. In this we have shown that counsel is in error. The prayer and the writ ran against both Edwards and the clerk of the circuit court, as such clerk; but it was served only upon the clerk and never upon Edwards. There is neither allegation nor proof that either Edwards or the clerk ever attempted to enforce this judgment in the circuit court, which was "functus officio." If there had been allegation or proof that Edwards and the clerk were attempting to execute this dead judgment, the complainants might have had some standing in equity to have them enjoined; but no such case was presented.

They pleaded payment specially in that action, and hence the bill and proof showed that the judgment was res judicata as to the checks. The only possible relief as to the lost or missing checks was to set aside the judgment, and reopen the case on the ground of fraud, surprise, or newly discovered evidence. The greater part of appellants' brief on original hearing was devoted to this feature of the case. Most of the cases cited and relied upon by appellants were cases in which judgments were set aside or sought to be set aside on account of fraud,

surprise, or newly discovered evidence, such as De Soto Co. v. Hill, 194 Ala. 537, 69 South. 948, which reviewed all prior cases on the subject. The case of Evans v. Wilhite et al., 167 Ala. 587, 52 South. 845, reviewed the cases and compared the equitable remedy with that afforded by the four months' statute against judgments obtained by fraud, surprise, or on account of newly discovered evidence.

[10] It is very true that equity has jurisdiction to establish and enforce an equitable set-off against a judgment where the plaintiff in judgment is insolvent, or the set-off or recoupment for some reason is not enforceable in a court of law; but, so far as the lost or missing checks were concerned, as to which almost all the contest has been in this case, there was neither set-off nor recoupment. They were merely evidences of payment of the demand sued on; there was no attempt to recover back money paid on them.

So far as the balance due Edwards for building the house for complainants and his lien on the house and lot in payment thereof is concerned, the judgment is res judicata as to the balance due, and as to the existence and extent of the lien. The suit in the circuit court was brought for no other purpose. The statute directs how it shall proceed, etc. The plaintiff in such suit can only recover the balance due, and if there is nothing due—the whole having been paid to plaintiff—the plaintiff, of course, fails. The statute also provides how the owner may protect himself against the claims of laborers and materialmen by demanding lists from the contractor as to such parties and their demands. The statute also provides for making all such persons—laborers or materialmen—parties, and provides that the owner shall be liable to them only as for any unpaid balance due the contractor. All these matters can be adjudicated and determined in a court of law as well as equity.

[11] So far as the lost checks are concerned, and so far as complainants may be liable under the statute to materialmen as for unpaid balances, that could all have been settled just as well in the circuit court as in the chancery court. Except as to the allegations of suretyship, all questions between complainants and Edwards as to balance due him, the amount paid him, and the extent of his lien, were adjudicated in the circuit court, and are therefore res judicata. The materialmen could not obtain or enforce a lien against the owner without notifying him of their claim before he pays the contractor. If Edwards deceived complainants as to these matters, and thus prevented them from making the defense in the law court, that might be ground for setting aside the judgment so obtained by fraud; but until such judgment is set aside it is conclusive against complainants and Edwards as to all questions litigated therein, which include all matters here complained of except the allegations as to complainants being sureties for Edwards to the other several respondents.

As to the questions of complainants being sureties for Edwards to other respondents, we never treated that question as to the equity of the bill for that purpose; that is, a bill by a surety to compel his principal to pay the debt secured, and for which the surety is liable, for the reason that question was not insisted upon in the original hearing by counsel on either side. There was only the slightest reference to the subject of suretyship, as we supposed, for the reason that the allegations of the bill as to suretyship each and all not only utterly failed for proof, but were affirmatively disproved by all the proof offered by the complainants. Of course, no relief could be granted on a theory which the complainants themselves disproved.

It is true, as insisted by counsel on rehearing, that this proof is not binding on the materialmen; but it is binding on the complainants who made the allegations and proof as to suretyship, and who are the only parties complaining against the decree of the lower court.